E. A. BOWMAN v. WABASH RAILROAD COMPANY, Appellant.

Division One, December 20, 1916.

1. **BLOCKING GUARDRAIL:** Coal Dust: Best Known Appliances. Where the employee who was responsible for the blocking of the guardrail in question testified for defendant that the method used was to drive between the main rail and the bent end of the guardrail a block of wood of sufficient length and size to fill the space between them in such manner that a man's foot could not be caught therein, and that a man's foot could not be caught when a guardrail is properly blocked, and the plaintiff's evidence is to the same effect, it cannot be held that coal dust sifted down from passing cars and filling the unblocked space up to the lower part of the ball of the rail, satisfied the statute (Sec. 3163, R. S. 1909) requiring that the best known appliances be, used for such purposes.

2. ———: Place of Injury. Evidence that the switchman's foot was caught under the ball of the guardrail; that it was impossible for his foot to have been caught elsewhere than at the point where blocking is required, namely, at the end of the guardrail where. it is bent out from the main rail to prevent the wheel's flanges from striking the end of the guardrail; that his foot was caught at a point at which the guard rail was "bent the opposite way

a little," and that the bend in the guardrail is the thing that creates the opening which blocking is designed to close, is sufficient to show that the switchman was injured at the point on the guardrail at which blocking is by statute required.

3. ———: ———: Between Main and Guard Rail. The purpose of the statute (Sec. 3163, R. S. 1909) is to prevent, as far as possible, the feet of railroad employees from being caught, and a switchman brings himself within its terms by showing his injury resulted from his foot being caught by reason of the railroad company's failure to block the guardrail. The fact that the earth outside the main rail was level with its top, that his foot was on the main rail and his toe slipped under the ball of the guardrail and the car wheel passed over it, will not prevent a recovery on the theory that his whole foot was not between the two rails.

4. ———: Validity of Statute: Daily Penalty. The elimination of so much of the statute in regard to blocking guardrails in railroad yards as provides a daily penalty, even if that were necessary, would not destroy the rest of the statute; and where the question of whether or not the daily penalty could be enforced is not in the case, the statute cannot be held to be invalid on any such ground.

5. ———: Instruction: What Constitutes Blocking. Loose particles of coal or coal dust, by chance fallen from passing trains between the main and guard rail, do not constitute a compliance with the statute requiring the "best known appliances to be used" for blocking guardrails; and where the defense is that the guardrail was blocked, not filled, instructions which ignore such a filling of the space between the rails by particles of coal and coal dust are not erroneous.

6. ———: ———: Filling and Blocking: Cured by Another. Where the statute requires guardrails to be filled or blocked, the instructions should not tell the jury that defendant railroad was required to do both; but such an error in an instruction so requiring is cured by another which tells the jury that they must find the guardrail was neither blocked nor filled before they can render a verdict for plaintiff.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller*, Judge.

AFFIRMED.

*J. L. Minnis, N. S. Brown* and *David H. Robertson* for appellant.

(1) The plaintiff was not entitled to recover and the court erred in refusing to direct the verdict for

269 Mo.—16

the defendant.   This is a suit under the statute, Sec. 3163, R. S. 1909, requiring railroad companies to use the best known appliances or inventions to block or fill guardrails, etc.   Plaintiff's evidence shows that the space between the guardrail and main rail at the point of the accident was filled, and the evidence does not tend to show that such filling is not the best known appliance.   An appliance is anything brought into use as a means to effect the end sought.   Honaker v. Board, 47 W. Va. 170; Bodie v. Railroad, 61 S. C. 468; Johnson v. Water Co., 71 Wis. 553.   (2)   The plaintiff's own evidence shows that he was not injured at the place required by the statute to be blocked or filled.   The danger arising from a guardrail is in the angle at the end of the guardrail.   O'Neil v. Railroad, 66 Neb. 638; Hamilton v. Mining Co., 108 Mo. 307; Brannock v. Railroad, 147 Mo. App. 309; Southern Pacific Co. v. Seeley, 152 U. S. 150.   (3)   The plaintiff's foot was not caught in this angle, and hence, if the statute was violated, such violation had no cause or connection with plaintiff's injury.   (4) Plaintiff's own evidence shows that even if the space between the guardrail and main rail, at the point of the injury, had been blocked, it would not have prevented the injury. Plaintiff's foot was not caught between the rails; his toe merely caught under the ball of the guardrail, which would have occurred even if the space at the point of the accident had been blocked.   (5) Sec. 3163, R. S. 1909, is void for uncertainty. Johnson v. Districh, 152 Mo. 251; State v. Light Co., 212 Mo. 109; Cook v. State, 26 Ind. App. 278; State v. Gaster, 45 L. R. A. 636; George v. Railroad, 179 Mo. App. 294; Railroad v. Commonwealth, 99 Ky. 132; Railroad v. Commission, 19 Fed. 692; Note to 32 L. R. A. 209; Railroad v. People, 77 Ill. 443.

*M. J. Lilly* and *O. C. Phillips* for respondent.

(1)   Plaintiff proved his case as alleged and the cause was properly submitted to the jury. Coal dust does not meet the requirements of the statute "to adopt,

put in use and maintain the best known appliances or inventions to fill or block.'' The defendant recognized the wooden block as the proper filling. The coal dust which had sifted in between the main rail and the guardrail was not brought into use by defendant as a blocking; neither was it a means to effect the end sought in requiring guardrails to be blocked, hence does not fall within defendant's definition of an appliance, to say nothing of ''the best known appliances or inventions'' which the the statute requires.  (2)  The evidence shows that plaintiff was injured at the place required by the statute to be blocked or filled. This is true, conceding that the angle at the end of the guardrail is the place which the statute requires to be blocked or filled. The plaintiff's foot was caught in this angle at the place where the guardrail was bent the opposite way from the main rail.  (3) The evidence shows that if the place between the guardrail and the main rail, at the point of the injury, had been blocked, plaintiff would not have been injured. Plaintiff's foot was caught under the ball of the guardrail. As stated by defendant's witness, the block is driven in between the main and guardrail along the web or thinner part of the rail, over the flange and under the ball of the rail. If the guardrail in question had been blocked in this way, it would be impossible for plaintiff to have caught his foot under the ball of the guardrail.  (4) Sec. 3163, R. S. 1909, is valid and not void for uncertainty, as contended by defendant. George v. Railroad, 179 Mo. App. 283.

BLAIR, J.—This is an appeal from a judgment for $9000 rendered by the Randolph Circuit Court in an action instituted by respondent to recover damages for the loss of a leg. The petition alleged the injury resulted from appellant's failure to block or fill one of its guardrails in its yards at Moberly. Respondent was a switchman and when injured was engaged, as one of a train crew, in hauling coal over that part of appellant's line between Moberly and Huntsville. This

crew had brought a coal train into the Moberly yards and, in the course of duty, respondent undertook to uncouple some moving cars. He stepped between the cars, his toe slipped under the ball or top of a guardrail, and before he could remove it a car wheel passed over his foot.

There was evidence pro and con on the question whether the guardrail was filled or blocked in the usual manner. In the sense used in this record, a guardrail is a rail placed inside of a main or running, or track rail, paralleling such rail except at each end, where it is bent out therefrom in order to prevent the flanges on the car wheels from striking the end of it. The method of blocking or filling guardrails in the Moberly yards, generally, and the guardrail in question, was by driving into the open space between the main rail and the flared or curved end of 'he guardrail a block of wood two or three feet long and large enough to fill the space up to the lower side of the ball of the rails. There is evidence tending to show that the guardrail by which respondent asserts his foot was caught was not blocked, but that coal dust had sifted down from passing cars and filled the unblocked space up to the lower part of the ball of the rail. Other facts in evidence, necessary to a decision, are stated in the course of the opinion.

I. Appellant contends there was no evidence coal dust accidentally deposited between the main and guardrails was not such blocking or filling as required by the statute. [Sec. 3163, R. S. 1909.] This requirement of the statute is that the ''best known appliances'' be used for such purposes. On the trial there was no pretense appellant employed, or attempted to employ, in its Moberly yards, or in connection with the particular guard rail in question, any method save blocking as above described. Appellant called the employee who, at the time respondent was injured, was responsible for the safety appliances affected by the statute (Sec. 3163, R. S. 1909),

<div style="margin-left:2em"><strong>Blocking<br>Guardrails.</strong></div>

so far as concerned the Moberly yards, and he testified the method used, with respect to guardrails, was to drive between the main rail and the bent or flared end of the guardrail a block of wood of sufficient size and length to fill the space in such manner that a man's foot could not be caught therein. He also testified that a man's foot could not be caught when a guardrail is properly blocked. Appellant's testimony was to the same effect. The jury must have found appellant's foot was caught under the ball of the guardrail and that the rail was not blocked. In the face of appellant's own proof that proper blocking would have rendered it impossible for respondent's foot to have been caught, it is hardly necessary to say that we cannot hold that coal dust accidentally sifted between the rails, and in spite of which appellant's foot *was* caught, satisfies the requirement (Sec. 3163, R. S. 1909) that the "best known appliances" must be used to block or fill the opening between the guardrail and main rail.

II. It is insisted the evidence shows respondent was not injured at the point on the guardrail where blocking is required. There is evidence respondent's foot was caught under the ball or top of **Evidence of Place of Injury.** of the guardrail, and further evidence, by both appellant's and respondent's witnesses, that it was impossible for his foot to have been caught elsewhere than at the end where blocking is required, the rails being too close together at all other places. Further, respondent testified his foot was caught at a point at which the guardrail was "bent the opposite way a little," and all the evidence is that the bend in the guardrail is the thing which creates the opening which blocking is designed to close. The evidence on this point is sufficient.

III. It is urged the evidence shows respondent's foot was not caught *between* the main rail and the guardrail, and that this ends the case. Respondent's

foot was upon the main rail and his toe slipped under the ball of the guardrail. The earth outside **Between Main and Guard Rail.** the main rail was level with its top. The guardrail was slightly higher than the main rail. The evidence tends to show the injury occurred at a point at which blocking was required and that had the guardrail been blocked respondent's foot could not possibly have been caught as he testified it was. This contention seems to assume that it was necessary to respondent's case that his whole foot be caught between the two rails in order that he might recover in this case. This cannot be true. The lack of blocking caused his toe to become wedged under the ball of the guardrail and this held his foot until the wheel passed over it. The purpose of the statute (Sec. 3163, R. S. 1909) is "to prevent, as far as possible, the feet of employees . . . from being caught," and respondent brought himself within the statute by showing that his injury resulted from his foot being caught by reason of appellant's failure to block the guardrail mentioned in evidence in this case.

IV. It is contended the statute is void for uncertainty. This question is considered and correctly decided, adversely to appellant, in George v. Railroad, 179 Mo. App. l. c. 292 et seq. The question whether the daily penalty could be enforced is not in this **Validity of Statute.** case. Eliminating the penalty clause, there is yet a valid provision remaining which is broad enough to cover this case. The elimination of the daily penalty clause, even if that were necessary, would not destroy the remainder of the act.

V. The instructions are criticized. The first predicated certain facts and required certain findings, and then directed the jury to find for respondent if they found that he "was injured as aforesaid by and in **Instructions.** direct and immediate consequence of the negligence of defendant in failing to block said guardrail, or in negligently maintaining the said

guardrail and track rail without any blocking or filling between said rails, so as to prevent as far as possible the foot of plaintiff from being caught therein.''

It is insisted the instruction erroneously (1) authorized a verdict in the absence of blocking ''regardless of whether the rail had been filled,'' and (2) ignored the evidence tending to show the space was filled with loose particles of coal dust which had dropped from passing cars. The defense was that the guardrail was *blocked,* not filled. This was the trial theory. Loose particles of coal or coal dust, by chance fallen between the rails, constitute no compliance with the statute. In the circumstances, the instruction was not prejudicial.

The second instruction reads as follows: ''The court instructs the jury, as a matter of law, that it was the duty of defendant to fill and block the guardrail mentioned in evidence, for the purpose of preventing, as far as possible, the feet of plaintiff and others of its employees then engaged in and about said railroad yards from being caught therein, and if you find and believe from the evidence that defendant did not on said day have said guardrail filled or blocked, and plaintiff was thereby injured, you should find,'' etc.

The statute requires guardrails to be filled or blocked. Assuming that the words ''fill'' and ''block'' are not used as different expressions of the same idea, the court should not have told the jury the statute required both things to be done. When the court came to the point of directing the jury what omission would authorize a verdict, it cured this, however, by instructing them, in effect, that they must find the guardrail was neither blocked nor filled before a verdict could be returned. This idea was impressed by several of the instructions given at the instance of appellant. There was nothing prejudicial in the instructions.

The judgment is affirmed. All concur.